UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JEFFREY AUBLE,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )      No.: 3:13-CV-422-TAV-HBG
                                        )
BABCOCK & WILCOX                        )
TECHNICAL SERVICES Y-12, LLC,           )
                                        )
            Defendant.                  )

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on defendant's Motion for Summary

Judgment [Doc. 10]. Plaintiff filed a response in opposition [Doc. 19], and defendant

replied [Doc. 23]. Having reviewed the parties' arguments, the record in this case, and

relevant law, the Court will grant defendant's Motion for Summary Judgment.

## I.    **Background**[1]

Plaintiff, Jeffrey Auble, began working in a lab for defendant, Babcock & Wilcox

Technical Services Y-12 ("B&W Y-12") on July 19, 2010 [Doc. 13-1 p. 81]. Kay Bailey

was Mr. Auble's immediate supervisor and she reported to Rhonda Bogard [Doc. 13-4 p.

1].

---

[1] As discussed more thoroughly in the analysis, the Court notes that plaintiff does not include a statement of facts in his response and does not contradict the majority of the facts contained in defendant's Motion for Summary Judgment [Doc. 19]. *See infra* Section III.

Sometime after he began working for defendant, plaintiff told Ms. Bailey that a part of his brain had been removed during a surgery [Doc. 19-1 p. 17]. Ms. Bailey contends that she "probably" would have relayed this information to Ms. Bogard [*Id.* at 21].

For the first few months of plaintiff's employment, there were no significant incidents [Doc. 13-2 p. 2]. Within a year, however, Ms. Bailey began receiving complaints about plaintiff from plaintiff's co-workers [*Id.*]. Ann Campbell, who worked in the lab with plaintiff, told Ms. Bailey that plaintiff's outbursts were upsetting and she would repeatedly ask him to stop [*Id.* at 6]. Ms. Campbell asked to be moved out of the lab because of plaintiff's behavior [*Id.*]. Other employees also made comments to Ms. Bailey, describing plaintiff as "creepy," "weird," "a time bomb," and one noted that "he scares me" [*Id.*]. Both Ms. Bailey and Ms. Bogard spoke with plaintiff about his behavior [*Id.*]. Plaintiff did not agree that his actions were negative, but he agreed to try and improve [*Id.*].

A manager complained about plaintiff's "lack of initiative" and his refusal to pursue a project unless it would involve overtime [*Id.* at 7]. Ms. Bailey also heard from employees that tasks which should take fifteen minutes took plaintiff an hour to complete [*Id.*].

Ms. Bailey commonly took notes in a logbook describing her observations at work [Doc. 19-1 p. 13]. She recorded some observations of plaintiff, describing him as having

2

a "dull" and "flat affect" [*Id.* at 12–13]. She commented that plaintiff "needed psychological treatment or evaluation" to "help with his anger issues" [*Id.* at 17].

In September 2011, Ms. Bailey and Ms. Bogard sought advice from Dr. Russ Reynolds, defendant's Lead Staff Psychologist, about how to improve plaintiff's behavior at work [Doc. 13-2 p. 6]. Dr. Reynolds suggested the supervisors give plaintiff immediate feedback when he acted inappropriately, something Ms. Bailey and Ms. Bogard began doing [*Id.*].

In December 2011, plaintiff informed Ms. Bailey that his physician had medically restricted him from driving [Doc. 13-1 p. 16]. Ms. Bailey removed plaintiff from a weekly task—which included driving—and assigned plaintiff's driving duties to other employees [*Id.*; Doc. 13-2 p. 8].

On April 18, 2012, plaintiff left a backpack unattended outside of a locked door to a secured area, creating a security concern [Doc. 13-1 pp. 28–30; Doc. 13-5 p. 2]. Security personnel interviewed plaintiff, searched his backpack, and obtained a written statement from him [Doc. 13-5 p. 2; Doc. 13-1 pp. 33–37, 84]. Plaintiff was cooperative during the interview, however his "mannerisms during the interview indicated he was having difficulty comprehending the issue" [Doc. 13-5 p. 2]. Steve Long, an Employee Relations Specialist, observed that plaintiff would not make eye contact, he seemed agitated, he murmured, talked under his breath, and almost turned his chair sideways to keep from looking at anybody [Doc. 13-1 p. 120]. Plaintiff admitted he was "irritated" during this meeting [Doc. 13-1 pp. 36–37].

3

After the interview, Ms. Bailey's directed plaintiff to return to his office [*Id.* pp. 38–39; Doc. 13-2 p. 9]. Instead, plaintiff went to the parking lot and asked a co-worker, Amy Evans, if he could ride with her to a radiological symposium [Doc. 13-1 p. 39]. Ms. Evans provided Ms. Bailey with a memorandum detailing several examples of plaintiff "display[ing] aggression, anger, and a disregard" for other employees including supervisors [Doc. 13-2 p. 12]. One of the events she described in her memorandum was the encounter with plaintiff when he asked her for a ride to the symposium [*Id.*]. She stated as follows:

> I had just started to pull out of the parking lot when Jeff flagged me down. When I stopped to roll down my window, he jerked the passenger door. I had locked the door when I saw him because he looked disheveled. Specifically, he was mumbling to himself and shaking his head with an angry demeanor. Then he asked in a raised voice if he could get in my car. I didn't really want to let him in but I also didn't want to exacerbate the situation so I let him in my car. He immediately asked where our supervisor was. When I asked if something was wrong, he mumbled that sometimes this place makes you not want to be here. I saw our supervisor in the parking lot and flagged her down. Without warning he jumped out of my car and got into hers

[*Id.*]. Ms. Evans also recorded incidents of plaintiff yelling at co-workers and supervisors, refusing to perform job assignments, and sleeping on the job [*Id.* at 12–13].

Even though Ms. Bailey again told plaintiff to return to the office, plaintiff continued to refuse and insisted on going to the symposium [*Id.* at 9–10]. Ms. Bailey drove plaintiff to the symposium where he slept for "most of the time" [*Id.* at 10]. The same afternoon, Mr. Long asked Ms. Bailey tell plaintiff to report to the medical

4

department the next morning for a fitness-for-duty evaluation by Dr. Linda Shissler, a Y-12 staff psychologist [*Id.*].

The next morning, plaintiff went to the medical department and while waiting to see Dr. Shissler, he become angry and loud [Doc. 13-1 pp. 49–52]. Another psychologist, Dr. Russ Reynolds called Y-12's security officers to "deter [plaintiff] from further intensifying his anger" [Doc. 13-6 pp. 1–2]. After the security personnel arrived, the incident did not escalate further [*Id.* at 2].

Dr. Shissler then evaluated plaintiff [Doc. 13-7 pp. 1–2]. She concluded that plaintiff "was not fit for duty at Y-12 because [he] was barely in control of his rage and was not able to be sufficiently focus on his work" [*Id.* at 2]. Dr. Shissler then assisted plaintiff in applying for short-term disability leave [*Id.* at 3]. Plaintiff expressed concern to Dr. Shissler about the status of his job and Dr. Shissler told him that "people do not lose their job because they go on medical leave" [*Id.*]. Dr. Shissler's goal was to facilitate treatment for plaintiff so that he could return to work irrespective of any disciplinary conduct that could be imposed as a result of plaintiff's misconduct [*Id.*].

Mr. Long stated at plaintiff's unemployment hearing that defendant did not terminate plaintiff in April because employees at Y-12 were "trying to get [plaintiff] help at the time," they were "concerned with [plaintiff's] well-being," and were aware that if plaintiff was terminated in April, he would not receive the medical benefits necessary to receive help [Doc. 13-1 pp. 122–23]. Mr. Long also contends in that some

circumstances, it is appropriate to terminate someone for being "aberrant or weird" [Doc. 19-3 p. 122].

While on disability leave, plaintiff worked with Sandra Hopko, a licensed clinical social worker [Doc. 13-7 p. 4]. Ms. Kopko completed a Y-12 disability certification form, which stated that the earliest plaintiff could return to work was August 12, 2012, and plaintiff notified defendant that he intended to return to work on that day [*Id.*; Doc. 13-1 p. 86].

Yyonne Bishop, Deputy Director of B&W Y-12's Environmental, Safety & Health organization, made the decision to terminate plaintiff [Doc. 13-3 p. 2]. She learned of plaintiff's previous conduct after he was released to return to work by his medical provider [*Id.* at 1]. After reviewing emails and notes provided by his co-workers and determining that previous counseling sessions with his supervisors proved ineffective, Ms. Bishop reviewed and approved a letter terminating plaintiff [*Id.* at 2–3]. The letter, sent by Diane Grooms, Acting Vice President, Human Resources, laid out the following reasons for terminating plaintiff:

> During the course of your employment at B&W Y-12, your supervisors have counseled you on your lack of effective communication skills and inability to get along with customers and co-workers as well as inappropriate displays of anger. You were formally coached and counseled on January 12, 2012, after you became angry and reached over a co-worker's head to forcefully slam your hand against a door, causing it to bounce back against the co-worker.
>
> Your unacceptable behavior culminated on April 18 and 19, 2012, after you left a backpack unattended outside of a conference area. You were initially uncooperative with a security investigation. You flagrantly and repeatedly ignored your supervisor's instruction to return to your office instead of

6

attending a conference at [ORAU], where you were observed sleeping throughout the conference.

You were scheduled for a medical evaluation on April 19, 2012. While waiting for your appointment, you grew increasingly agitated and loud, yelling and verbally abusing the office staff to the point that other employees believed you were about to physically attack the office staff. You displayed rage to the degree that Dr. Russ Reynolds was compelled to call the Protective Forces to subdue you if necessary.

The Company cannot tolerate this type of conduct. It is the Company's expectation that all employees follow the direction of their supervision and that they treat their coworkers with dignity and respect and do not sleep at work. These violations of Y-12's Standards of Conduct are grounds for disciplinary action up to and including termination. The severity of these multiple violations warrants termination

[Doc. 13-1 p. 99]. Plaintiff's termination was effective August 22, 2012 [*Id.*].

Plaintiff filed a complaint claiming that his termination was not based on his allegedly inappropriate actions at work but instead was based on defendant's perception of plaintiff as disabled and/or plaintiff's disability in violation of the Americans with Disabilities Act ("ADA") and the Tennessee Disability Act ("TDA") [Doc. 1 p. 4–5].[2]

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris*

---

[2] Plaintiff refers to the Tennessee Handicap Act in the complaint, however, Tenn. Code Ann. § 8-50-103 is now known as the Tennessee Disability Act.

*Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quotations and citation omitted). Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the

evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Before turning to the analysis, the Court notes that plaintiff makes no attempt to establish a *prima facie* case,[3] and presents no facts that contradict defendant's stated reasons for terminating plaintiff. Instead, plaintiff argues that summary judgment should be denied because: (1) the declarations defendant relies on are inadmissible; and (2) there are genuine issues of material fact.

### A. Admissibility of Declarations Supporting Defendant's Motion

Plaintiff contends that defendant has not presented admissible evidence in support of its motion for summary judgment, and consequently, the Court must deny defendant's motion [Doc. 19 p. 1]. Plaintiff argues first, that the witness declarations plaintiff relies on should be disregarded because they are not based on personal knowledge [*Id.* at 2]. Second, plaintiff asserts that these witness declarations are filled with inadmissible hearsay [*Id.* at 6].

---

[3] As discussed below, plaintiff is required to make out a *prima facie* case to survive summary judgment.

9

### 1.     Personal Knowledge

Plaintiff argues that "[d]efendant's declarations should be disregarded because they do not even . . . state, let alone demonstrate, that they are based on the declaration declarants' personal knowledge" [*Id.*].  Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."     Plaintiff emphasizes that none of the declarations specifically state that the declarant has personal knowledge and that fact is a basis for disregarding them [Doc. 19 p. 4].  The Sixth Circuit, however, has expressly rejected this argument, instead holding that "personal knowledge and competence can be inferred from [the] contents" of a declaration.  *Jacobs v. Wilkinson*, 156 F.3d 1230 (Table), No. 97-3818, 1998 WL 393789, at *1 (6th Cir. June 15, 1998) (citation omitted).

Plaintiff also asserts that even when looking at the contents of the declarations, it is clear that the "declarations are rife with statements that are obviously not based on the declarant's personal knowledge" [Doc. 19 p. 4].  Plaintiff specifically cites to portions of the declarations where the declarants revealed that he or she heard the information from other individuals [*Id.* at 5–6].  Therefore, it appears, based on the examples plaintiff cites in support of his contention, that the declarants revealed their basis for knowledge and that plaintiff's primary concern is actually that the declarations are based on hearsay [*Id.*].

## 2.    The Admissibility of the Underlying Statements[4]

Plaintiff proclaims that the basis of knowledge underlying several of the declarations is inadmissible hearsay [*Id.* at 6].  The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801.  The Sixth Circuit has held in termination disputes that out-of-court statements not offered to prove their truth but rather offered to "demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff" do not fall under the definition of hearsay.  *Haughton v. Orchid Automation*, 206 F. App'x 524, 532 (6th Cir. 2006); *see also Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584 (6th Cir. 2007) (allowing out-of-court statements to demonstrate the state of mind of a manager in taking general adverse employment actions against an employee); *Marsh v. Associated Estates Realty Corp.*, 521 F. Appx. 460, 469 n.2 (6th Cir. 2013) (scores compiled by "independent third-party investigators" were not hearsay but admissible "to demonstrate the state of mind of [the] decision-makers when they fired" an employee).

Plaintiff is arguing against the admissibility of complaints by plaintiff's co-workers to management when recounted in the managers' declarations rather than by the co-workers themselves.  However, the underlying statements are not being offered for

---

[4] Plaintiff argues that these out-of-court statements do not qualify as business records, and defendant does not contest this point [Doc. 19 p. 6; Doc. 23 p. 2 n.3].  Therefore, the Court will not address whether the statements qualify as business records as defined in Fed. R. Evid. 803(6).

their truth, but to demonstrate the motive behind and basis for terminating plaintiff. As such, they are admissible for this purpose.

Furthermore, defendant need not prove that the underlying complaints are correct. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008). In the Sixth Circuit, the inquiry is whether the employer has an "honestly held belief" that the employee committed a terminable offense and whether the adverse decision was a "reasonably informed and considered decision." *Id.*; *Michael*, 496 F.3d at 599. The statements from co-workers to management are therefore essential in deciphering whether defendant's decision was reasonably informed. The managers did not need personal knowledge of the underlying events in order to come to a decision. The numerous complaints defendant received regarding plaintiff's misconduct is sufficient for defendant to come to a reasonably informed decision.

None of the decisions plaintiff cited in support of his argument are binding authority, and even as persuasive authority, they are distinguishable from this case. In *Ward v. First Federal Savings Bank*, 173 F.3d 611, 617–18 (7th Cir. 1999), the plaintiff's affidavit asserted he was "aware" the decision maker made racially biased statements but failed to reveal the source of his "awareness." In *Woida v. Genesys Regional Medical Center*, 4 F. Supp. 3d 880, 904–05 (E.D. Mich. 2014), the employee's affidavit asserted that other employees received lower levels of discipline without explaining how she had personal knowledge of that discipline. In *Schneider v. United States*, 257 F. Supp. 2d 1154, 1158 (S.D. Ind. 2003), the court said the declarations "frequently contain reports of

12

conversations or communications to which the affiant was not a party, and lack any indication as to how the affiant learned of the information alleged in the statement." In each decision, the testifying witness made statements offered to prove the truth of an out-of-court statement or event (e.g., that a decision maker made racially biased statements) but the witness failed to hear the statement or observe the described event, and the declarant did not relay how he or she knew the information. That is not the case here. Defendant neither offered, nor did it need to offer, the out-of-court statements to prove that the events described by plaintiff's co-workers actually occurred. Additionally, the declarants made clear that they were told by a third party that the underlying events took place, so the information was not from some unknown source.

The Court notes that some of the underlying statements defendant contends are not offered for their truth are included in defendant's statement of facts [Doc. 13 pp. 2–15]. Defendant cannot have it both ways. Because defendant made no argument to qualify any of the co-worker complaints as within a hearsay exception, the Court will not take any of these statements for their truth. Accordingly, the Court will consider the underlying statements only to the extent they are relevant to demonstrate the state of mind and motive of defendant in discharging plaintiff.

## B.    Disability Discrimination[5]

The Americans with Disabilities Act ("ADA") provides that an employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011) (quoting 42 U.S.C. § 12112(a)).    In ADA cases, "a plaintiff may establish unlawful discrimination by introducing direct evidence of discrimination . . . or by introducing indirect evidence of discrimination to shift the burden or production to the employer to articulate a legitimate, nondiscriminatory reason or making the adverse employment decision." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (citations omitted), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc).    "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997).

---

[5] "A claim brought under the THA [Tennessee Handicap Act, now known as TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act." *Cardenas-Meade v. Pfizer, Inc.*, No. 12-5043, 2013 WL 49570, at *2 n.2 (6th Cir. Jan. 3, 2013) (quoting *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W. 3d 579, 584 (Tenn. Ct. App. 2004)).    Accordingly, the following law and analysis applies to both plaintiff's TDA and ADA claims.

Before turning to the analysis of the disability discrimination claims, the Court notes that plaintiff makes no attempt in his response to apply the facts of this case to relevant ADA law. Instead, plaintiff attempted to dispute only a few facts that he claimed are material but did not analyze under the law why those facts are material and how they could result in a verdict for plaintiff.

### 1. ADA Case Based on Direct Evidence

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). The Sixth Circuit provides the following framework for ADA cases where the plaintiff offers direct evidence of discrimination:

> If the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap:
>
> (1) The plaintiff bears the burden of establishing that he or she is disabled.
>
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.
>
> (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Monette*, 90 F.3d at 1186 (footnote omitted). The Sixth Circuit has held that "evidence that an employer knows that an employee has a disability is not enough to establish that

this knowledge was the basis for termination." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 522 (6th Cir. 1998).

Plaintiff submits that the jury could find for plaintiff based on direct evidence that defendant perceived plaintiff as disabled [Doc. 19 p. 19]. In support of this statement, plaintiff discusses how management was aware of his disability, how they attributed plaintiff's demeanor to this disability, how they allowed plaintiff's co-workers to refer to plaintiff as "weird," and how they participated in unqualified speculation about plaintiff's condition [*Id.* at 19–21]. But plaintiff does not provide evidence establishing that this knowledge was the basis for termination, so plaintiff cannot prevail under the direct evidence framework. *See Brohm*, 149 F.3d at 522. Consequently, the Court will now turn to whether plaintiff can establish a case based on indirect evidence.

### 2.    ADA Case Based on Indirect Evidence

In the absence of direct evidence of discrimination, courts analyze ADA discrimination claims following the burden shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first make out a *prima facie* of discrimination, after which, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802–04. If the defendant does so, then the burden returns to the plaintiff to prove that the stated reason is pre-textual. *Id.* "At the summary judgment stage, the district court must determine whether there is 'sufficient evidence to

16

create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 661 (6th Cir. 2013) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

Accordingly, plaintiff must first make out a *prima facie* case of discrimination. The Court notes that the Sixth Circuit has set forth two different *prima facie* standards for ADA claims in employment termination actions one with five elements and one with three elements.[6] *Compare Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011) (holding that plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced), *with Demyanovick v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (holding that a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of a position; and (3) he suffered an adverse employment action because of his disability). Defendant analyzed this case under both the three- and five-element frameworks, and the Court elects to do the same.

---

[6] "There has been some confusion in this circuit as to the proper test for establishing a *prima facie* case of employment discrimination under the ADA." *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011) (advocating for and applying the five-element test). Post-*Whitfield* cases in the Sixth Circuit have continued to apply both the five and three-element tests for employment discrimination.

17

### a.  Five-Element *Prima Facie* Standard

In one line of decisions, the Sixth Circuit sets forth a *prima facie* standard where a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Hurt v. Int'l Servs., Inc.*, — F. App'x —, 2015 WL 5332531, at *4 (6th Cir. 2015) (citation omitted); *se,e e.g.*, *Whitfield*, 639 F.3d at 258–59; *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 597 (6th Cir. 1999); *Monette*, 90 F.3d at 1186.

Plaintiff cannot establish a *prima facie* case under this standard, nor does he attempt to do so.  Defendant never posted a vacancy nor accepted applications for plaintiff's position, and plaintiff was never replaced [Doc. 13-2 p. 5].  Therefore, plaintiff cannot meet the fifth element of this *prima facie* test, and cannot survive summary judgment under this test.

### b.  Three-Element *Prima Facie* Standard

In a second line of cases, the Sixth Circuit sets forth a different *prima facie* standard, holding that a plaintiff's *prima facie* case must include a causal connection between the adverse action and the disability.  *See, e.g.*, *Demyanovick*, 747 F.3d at 433; *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008); *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007); *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  In order to establish a *prima facie* case of

18

discrimination under this standard, a plaintiff must show that: (1) he is disabled; (2) he was otherwise qualified for the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Demyanovich*, 747 F.3d 419 at 433. "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy*, 484 F.3d at 365 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendant concedes for the purpose of this motion that plaintiff can demonstrate the first two requirements of this *prima facie* standard [Doc. 13 p. 17 n.10]. Defendant argues, however, that plaintiff cannot establish a causal connection between his disability and his termination [*Id.* at 17]. Plaintiff made no attempt to establish a *prima facie* case in his response to defendant's motion for summary judgment, so the Court accepts defendant's contention that plaintiff's argument could be "based on two unrelated circumstances: (1) that defendant waited until his physician allowed him to return to work before terminating him in August 2012; and (2) representations allegedly made by Dr. Shissler and Ms. Bailey that he would be allowed to resume his job" [Doc. 13 p. 17].

As to the first argument, there is no indication in the record that defendant waited until plaintiff's medical provider allowed him to return to work before terminating him for any reason other than to permit plaintiff to receive his full pay and medical benefits

for a longer period of time. Plaintiff provides no evidence that defendant waited to terminate plaintiff for any discriminatory reason.

As to the second argument, regarding representations that plaintiff would be able to return to his job, even if Dr. Shissler and Ms. Bailey made these assurances, those representations do not independently establish discriminatory intent. "Statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden' of demonstrating animus." *Rowan*, 360 F.3d at 550 (citation omitted). Neither Dr. Shissler nor Ms. Bailey had the authority to make a decision to terminate plaintiff. Consequently, both potential reasons defendant submits plaintiff may be relying on to establish a causal nexus fail.

While plaintiff never specifically discusses the casual nexus, he argues that the Court should deny summary judgment because there are several genuine disputes as to material facts. The Court will analyze these facts as if plaintiff contends they could establish a causal nexus. Plaintiff argues that the jury could find for plaintiff on two bases: (1) Steve Long's prior testimony was false and from that the jury could infer that Mr. Long was attempting to conceal his participation in an illegal termination of plaintiff; (2) that defendant perceived the plaintiff as disabled. Even if true, these facts also fail to establish a causal connection between plaintiff's disability and his termination.

Plaintiff contends that Mr. Long lied in the unemployment hearing when he testified that he did not know the reason why plaintiff was placed on disability in the first

place [Doc. 19 p. 15–16].[7] Even if the Court takes the fact that Mr. Long lied in this instance as true, absent additional evidence, a reasonable fact finder could not find for plaintiff. Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs." *Hein*, 232 F.3d at 488. Absent further evidence of an illegal termination, relying on the mere fact that Mr. Long lied in one instance—or even the fact that he is a liar— is insufficient to establish that there is a causal connection between plaintiff's disability and his termination. Coming to that supposition would require the Court to accept plaintiff's "mere conclusory and unsupported allegation[]"— that because Mr. Long lied once he must be concealing an illegal termination—which is not sufficient to overcome a motion for summary judgment. *See Bell*, 351 F.3d at 253.

Additionally, plaintiff asserts that the jury could find for plaintiff because defendant perceived plaintiff as disabled. In support of this allegation, plaintiff contends that: (1) defendant's management was aware of plaintiff's brain surgery and attributed plaintiff's demeanor to this surgery; (2) defendant's management allowed plaintiff's co-workers to refer to plaintiff as "weird"; (3) defendant's management allowed unqualified employees to opine upon plaintiff's psychological condition [Doc. 19 pp. 19–21].

Defendant never contests that individuals at B&W Y-12 were aware of plaintiff's condition, and thus this statement cannot create a genuine issue of fact [Doc. 23 p. 13]. Further, the Sixth Circuit has repeatedly held that "evidence that an employer knows that

---

[7] Defendant makes a strong argument that—based on the record—plaintiff is misconstruing the evidence and consequently, plaintiff's contention is incorrect. The Court need not address this issue because the Court does not find plaintiff's argument persuasive even assuming Mr. Long's testimony was untruthful.

an employee has a disability is not enough to establish that this knowledge was the basis for the termination." *Brohm*, 149 F.3d at 522.

Plaintiff also contends that defendant's management attributed plaintiff's demeanor to his brain surgery. The Sixth Circuit "has repeatedly stated that an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job." *Macy*, 484 F.3d at 366 (citations omitted). It follows that even if individuals at B&WY-12 attributed plaintiff's misconduct to his disability, that does not change the fact that plaintiff engaged in terminable misconduct.

Plaintiff also argues that the jury could reasonably conclude that the decision makers tolerated inappropriate beliefs and attitudes amongst plaintiff's co-workers and that this toleration demonstrates the decision makers' bias against plaintiff due to his perceived disability. In support, plaintiff cites to statements by co-workers describing plaintiff as "weird" and "creepy." However, contextually, there is no indication that these statements were made because of some disability bias. The co-workers who made these statements apparently did so because of plaintiff's outbursts at work, and plaintiff does not provide any contrary evidence. Additionally, without evidence that allegedly biased statements by co-workers had a "direct relation to the actual termination decision," the statements cannot be imputed to the ultimate decision maker. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015). Plaintiff does not provide any evidence that establishes a "direct relation."

22

Similarly, plaintiff contends that Mr. Long thought it was "appropriate to terminate an employee for being 'aberrant'" [Doc. 19 p. 21]. Even if the Court accepts this statement as true,[8] it does not establish a causal connection between plaintiff's termination and his disability. Mr. Long firmly denied that plaintiff had been terminated simply for being "aberrant or weird" and plaintiff has not provided any contrary facts.

Lastly, plaintiff argues that Ms. Bailey made improper assessments concerning plaintiff's psychological condition and that tends to show defendant's disability bias. To illustrate this idea, plaintiff points to Ms. Bailey describing plaintiff as having a "dull" or "flat affect," and to her conclusion that plaintiff "needed psychological treatment or evaluation" due to his anger issues [Doc. 19 p. 14]. Plaintiff does not point to any case law holding that the use of the terms "flat" or "dull" affect reflect a bias against an individual with a disability. Further, the Sixth Circuit has held that asking for a "psychological evaluation" of an employee does not "indicate that an employer regards an employee as disabled" and consequently such a request cannot provide competent evidence of discrimination because of an employee's disability. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811–13 (6th Cir. 1999).

---

[8] Defendant makes a strong argument that—based on the record—plaintiff is misconstruing the evidence and consequently, plaintiff's contention is incorrect. The Court need not address this issue because the Court does not find plaintiff's argument persuasive even if Mr. Long did think it "appropriate to terminate an employee for being 'aberrant.'"

Under Sixth Circuit precedent, plaintiff had an obligation to demonstrate that he can establish a *prima facie* case. Plaintiff does not attempt to do so under either the five- or three-element *prima facie* test. Based on the undisputed facts, plaintiff does not have a *prima facie* case under the five-element test. Under the three-element test, even if the Court construes plaintiff allegedly disputed material facts as an attempt to establish a causal connection, plaintiff likely still fails to sufficiently establish a causal connection.

### 3. Defendant's Non-Discriminatory Reasons for Termination

Even if plaintiff can establish a *prima facie* case under the three-element *prima facie* test, the Court finds that defendant articulated a legitimate, non-discriminatory reason for terminating plaintiff. Where a plaintiff makes a *prima facie* showing, the Court must apply the *McDonnell Douglas* burden-shifting analysis. *Daughtery v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). Under that analysis, defendant must offer a legitimate, nondiscriminatory reason for plaintiff's termination. Defendant's burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *see also* Tenn. Code Ann. § 4-21-311(e) ("The burden on the defendant is one of production and not persuasion.").

Defendant presents a legitimate, non-discriminatory reason, that is plaintiff's disruptive misconduct as described in Ms. Groom's termination letter. Accordingly, the burden now shifts back to plaintiff to demonstrate that the reason is pretextual. *Demyanovich*, 747 F.3d at 431.

24

### 4. Pretext

"Plaintiffs may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Demyanovich*, 747 F.3d at 431 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). Here, plaintiff makes no attempt to argue pretext and the Court finds that plaintiff cannot create a genuine dispute as to pretext.

First, plaintiff's termination was based in fact. Plaintiff admitted: (1) to leaving his backpack outside the secured area; (2) to encountering employees outside the secured area when he went to retrieve the backpack; (3) that those employees called security; (4) that Ms. Bailey instructed him to return to his office; (5) that he ignored her direction and went to the symposium; (6) that he slept during the symposium; and (7) that he was "angry," and loud at having to wait to see Dr. Shissler. If plaintiff's own admissions are not enough, defendant reasonably relied upon the descriptions of plaintiff's conduct provided by other employees, including Dr. Reynolds, who was in the medical department that day. Plaintiff's burden is to demonstrate that defendant's decision was "so unreasonable as to be disbelieved." *Sybrandt v. Home Depot*, 560 F.3d 553, 561 (6th Cir. 2009). When even plaintiff admits to the primary basis for termination, it is difficult to make an argument that plaintiff's termination was not based in fact.

Second, plaintiff's misconduct appears to have actually motivated the decision. Plaintiff has not noted one instance when an employee at B&W Y-12 said anything

negative to him regarding his condition. On the contrary, Ms. Bailey accommodated his medical restriction by assigning the duty of driving to other employees—and she never made a negative statement about his inability to drive [Doc. 13-1 p. 70]. Other than bare assertions regarding an illegal termination, plaintiff has not provided any evidence that he was terminated for any reason other than his misconduct.

Third, plaintiff's repeated misconduct is a reason sufficient to warrant termination. Plaintiff does not provide an argument to contest this point and, as noted above, he readily admits that he committed many of the acts laid out in his termination letter. Plaintiff was sleeping on the job, yelling at co-workers, and refusing to complete assigned tasks. This misconduct provides a sufficient basis for defendant's termination decision.

Having closely reviewed the record, the Court thus finds plaintiff does not create a genuine dispute that defendant's reason for terminating him was pretext for discrimination. Accordingly, because the available evidence is insufficient to support an inference of discrimination or to support that defendant's non-discriminatory reason was pretextual, the Court finds that summary judgment on plaintiff's disability discrimination claim is appropriate.[9]

---

[9] Defendant contends that plaintiff cannot now assert claim for failure to accommodate [Doc. 13 p. 30]. Plaintiff does not address this argument in his response and consequently the Court concludes that plaintiff has waived any opposition to defendant's argument on failure to accommodate. *See Taylor v. Unumprovident Corp.*, No. 1:03-CV-1009, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005) (a responding party waives opposition to an opponent's argument when it fails to respond to that argument). The Court therefore finds that plaintiff has no claim for failure to accommodate.

**IV.     Conclusion**

For the reasons stated herein, the Court will **GRANT** defendant's Motion for Summary Judgment [Doc. 10] in all respects.  The Court will **DISMISS** all claims against B&W Y-12 and direct the Clerk of Court to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE